WO NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Humphreys & Partners Architects LP, | No. CV-14-01514-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Atlantic Development & Investments Incorporated, *et al.*, | |
| Defendants. | |

At issue are Plaintiff Humphreys & Partners Architects, LP's (HPA) Rule 12(b)(1) and Rule 12(b)(6) Motions to Dismiss. (Docs. 111, 112.) First, the Court will resolve HPA's Rule 12(b)(1) Motion to Dismiss Counterclaim Counts For Lack Of Subject Matter Jurisdiction (Doc. 111, Rule 12(b)(1) MTD), seeking dismissal of Counts I-IV of Defendants' Counterclaim. Defendants filed a Response (Doc. 117, Rule 12(b)(1) Resp.), and HPA filed a Reply (Doc. 121, Rule 12(b)(1) Reply). Second, the Court will resolve HPA's Rule 12(b)(6) and Rule 9(b) Motion to Dismiss Counterclaim (Doc. 112, Rule 12(b)(6) MTD), seeking dismissal of Counts II-XI of Defendants' Counterclaim. Defendants filed a Response (Doc. 116, Rule 12(b)(6) Resp.), and HPA filed a Reply (Doc. 122, Rule 12(b)(6) Reply). The Court finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f).

**I. BACKGROUND**

For the purposes of ruling on the present Motions, the Court must take the allegations of material fact as true and construe them in favor of the nonmoving party—

here, Defendants. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (2009). According to the parties' allegations, Defendants, including Atlantic Development and Investments, Inc. (ADI)—a Connecticut corporation that conducts business in Arizona—and Auburn Ventures, LP (AV)—a Colorado limited partnership that conducts business in Arizona—sought to develop a plot of land in Castle Rock, Colorado into a senior living center.[1] (Doc. 110 at 1-10, Am. Answer ¶¶ 2, 18.) To this end, Defendants initially employed architect Paul Hendricks Masse and his firm, PHM Ltd., in November 2011. (Doc. 110 at 12-27, Countercl. ¶ 14.) In April 2012, after Masse completed some preliminary plans (the "Masse Plans"), Defendants sought further architectural planning services from another firm, Plaintiff HPA—a Texas firm that conducts business in Texas. (Doc. 68, First Am. Compl. (FAC) ¶ 1; Countercl. ¶ 19.) On April 25, 2012, Defendants accepted a proposal by HPA ("Proposal Agreement") to provide plans and drawings that included elevations and other information necessary to proceed with development at Castle Rock. (Am. Answer ¶ 18; Countercl. ¶ 17.)

After HPA concluded the work described in the Proposal Agreement, Defendants and HPA negotiated from June to August 2012 as to whether HPA would provide more comprehensive architectural services to Defendants. (Am. Answer ¶ 27.) Defendants ultimately decided to retain another firm for the remaining work and informed HPA that its work on the project was totally concluded on or about August 7, 2012. (Am. Answer ¶ 27.)

Thereafter, Defendants continued to use the renderings and plans provided by HPA in the construction process at Castle Rock. (Am. Answer ¶ 27.) On July 7, 2014, HPA brought the present suit, claiming that the continued use of the renderings and plans it provided to Defendants constituted a violation of its copyright in the work. (FAC ¶ 41.)

---

[1] The Amended Complaint, the operative pleading, lists 13 Defendants, including ten entities and three individuals. All 13 Defendants filed a joint Amended Answer and Counterclaim (Doc. 110) and joint Responses (Docs. 116, 117) to the present Motions to Dismiss.

In response, Defendants filed a Counterclaim to raise 11 Counts against HPA, and HPA now asks the Court to dismiss all Counts against it.

## II. ANALYSIS

### A. Rule 12(b)(1) Motion to Dismiss

Of the 11 Counts Defendants have brought, HPA first moves to have four of them dismissed, Counts I, II, III and IV, for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). (Rule 12(b)(1) MTD at 1.) Count I is a claim for reimbursement of the compensation Defendants paid HPA pursuant to a Colorado unauthorized practice of architectural services statute. (Countercl. ¶¶ 1-11.) Count II asks for a declaratory judgment that Defendants own the copyright to the preliminary plans prepared by Mr. Masse and the plans HPA made thereafter, which were based on the Masse Plans. (Countercl. ¶¶ 12-29.) Count III claims that HPA's effort to copyright the plans produced under the proposal between HPA and Defendants, using the Masse Plans as a foundation, constituted copyright infringement by HPA. (Countercl. ¶¶ 30-45.) Count IV prays for an alternative declaratory judgment in the event the Court denies Counts II and III. (Countercl. ¶¶ 46-57.) Defendants ask the Court to declare Defendants to be joint authors of any work created under the Proposal Agreement because they provided to HPA the Masse Plans, which were integral in developing the final product. (Countercl. ¶¶ 47, 48, 50-51.)

HPA now moves the Court to dismiss Counts I through IV pursuant to Rule 12(b)(1), arguing that Defendants' Counterclaim does not adequately allege facts necessary for standing or subject matter jurisdiction. (Rule 12(b)(1) MTD at 1-2.)

### 1. Legal Standard

A motion to dismiss for lack of subject matter jurisdiction brought pursuant to Rule 12(b)(1) may facially attack the existence of subject matter jurisdiction or may challenge the truth of the alleged facts that would confer subject matter jurisdiction on the court. *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)).

Courts are permitted to consider evidence to decide a factual attack on subject matter jurisdiction. *Thornhill*, 594 F.2d at 733. The party asserting jurisdiction has the burden of proof to show that the court has subject matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). Where a claimant lacks standing, the court must dismiss the action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *Ervine v. Desert View Reg. Med. Ctr. Holdings, LLC,* 753 F.3d 862, 868 (9th Cir. 2014).

### 2. Count I: Reimbursement Claim

In Count I, Defendants seek reimbursement for all sums paid to HPA in connection with the plans and renderings prepared by HPA under the Proposal Agreement. (Countercl. ¶¶ 1-11.) Defendants base this claim on a Colorado statute that prohibits the unauthorized practice of architecture.[2] *See* C.R.S. § 12-25-305 (2013). The Colorado Legislature amended this statute, effective July 1, 2013, to permit a claim for restitution of all sums paid to an unlicensed practitioner of architectural services. *Compare* § 12-25-305 (2012), *with* § 12-25-305(10) (2013). HPA moves to dismiss Count I on the basis that its work for Defendants ended in 2012, before the statute was amended. (Rule 12(b)(1) MTD at 10-11.) In response, Defendants argue that if this Court concludes that the amended version of § 12-25-305 does not sustain Defendants' claim, the Court should allow the claim under the prior version of § 12-25-305 pursuant to an "Implied Remedy Doctrine" under Colorado law.

#### a. Claim Under Current Version of C.R.S. § 12-25-305

Colorado's § 12-25-305 did not contain any restitution provision for violations prior to July 1, 2013. C.R.S. § 12-25-305 (2012). Courts will not apply a revised statute to conduct occurring before the revision unless the legislature makes it clear that it intends the revision to retroactively reach past conduct. *Rivers v. Roadway Exp., Inc.*, 511

---

[2] With regard to Count I, the parties provide the Court with no analysis as to why Colorado law applies to the Proposal Agreement for work done by a Texas architectural firm for an apparently Arizona-based client developing a Colorado property. Defendants also bring claims arising from the same Proposal Agreement under Arizona and Texas statutory law (Counts IX, X).

- 4 -

U.S. 298, 313-14 (1994). The version of a statute to use to evaluate a potential claim is the version in effect at the time when the events giving rise to the potential claim occur. *Id.* at 311-312. As a default, subsequent changes to a law do not change or add penalties retroactively for behavior that took place before the changes. *See* Jill E. Fisch, *Retroactivity and Legal Change: An Equilibrium Approach*, 110 HARV. L. REV. 1055, 1059-66 (1997). Thus, any express remedy must come from the post-2013 version of § 12-25-305 and must address behavior that took place after the change to the statute became effective on July 1, 2013.

Here, Defendants do not plead that HPA performed any further work on the project after 2012. Indeed, Defendants' Amended Answer forecloses this possibility when it states, "HPA was advised that its proposal was rejected, its scope of work for Auburn Ventures was now complete, and Auburn Ventures would be working with another architect . . . to finish the project," without further allegation as to work HPA did for Defendants. (Am. Answer ¶ 27.) Because Defendants failed to plead that any work was performed on the project after 2012, they have no cause of action under the revised version of § 12-25-305.

### b. Claim Under Pre-2013 Version of C.R.S. § 12-25-305

Defendants assert that, in any event, Colorado's Implied Remedy Doctrine provides a private right of action for Defendants' reimbursement claim.

A state statute will grant a private right of action when the legislature makes the intent to grant a private right of action to vindicate violations of the statute clear in the text of the statute. *L & M Enterprises, Inc. v. City of Golden*, 852 P.2d 1337, 1338-39 (Colo. App. 1993). Absent an express provision, courts are cautious about reading causes of action into a statute. *See id.* at 1339-40 (noting that plaintiff's arguments in favor of implying cause of action are compelling, but fail to demonstrate the requisite legislative intent). In Colorado, courts sometimes recognize an implied right of action in state statutes that do not otherwise include any express private enforcement provisions by way of a doctrine called the Implied Remedy Doctrine. *Parfrey v. Allstate Ins. Co.,* 815 P.2d

959, 965-66 (Colo. App. 1991). The Implied Remedy Doctrine requires that the claimant demonstrate three elements. *Id.* at 965. First, the claimant must show that it is part of the class for whose benefit the statute was enacted. *Id.* Second, the claimant must show explicit or implicit legislative intent to create a private cause of action. *Id.* Third, the claimant must show that implying a private cause of action is consistent with the underlying purposes of the legislative scheme. *Id.* Implied remedies, even in Colorado, are not recognized without evidence that the legislature intended to provide a private cause of action. *L & M Enterprises,* 852 P.2d at 1338-39.

No implied right of action exists here because the legislature contemplated enforcement provisions and included those that it deemed necessary and expedient, even in the pre-2013 version of the statute. *See* C.R.S. § 12-25-305 (2012) (contemplating criminal enforcement as well permanent or temporary cease and desist orders to address violations). The legislature chose to allow enforcement only via criminal charges or action by the state licensing board. *Id*. Insofar as new provisions were added that allowed for reimbursement of all sums received for unlicensed labor, effective in 2013, the statute indicates that the legislature intended to reserve those remedies to the state licensing board in the absence of explicit verbiage indicating otherwise. *Id.* Moreover, other Colorado laws explicitly allow for action by private citizens. *See, e.g.*, C.R.S. 6-1-113 (2003) (making damages actions for consumer fraud or deception available to various classes of consumers and private citizens as well as the Attorney General). But Colorado lawmakers left out a private enforcement provision here, and this Court will not substitute another judgment for that of the legislature.

The Court will grant HPA's Motion to Dismiss Count I because the relevant Colorado statute—even presuming it applies to the work HPA did under the Proposal Agreement—did not grant a private right of action at the time that HPA performed the work. Further, Colorado's Implied Remedy Doctrine does not allow Defendants to defeat dismissal because it appears the legislature intentionally omitted from the statute a private right of action for the unauthorized practice of architecture. Because Defendants have

1 neither an express nor an implied claim for reimbursement for work done in 2012 and their Answer forecloses the possibility that HPA did work for Defendants after 2012, the Court will dismiss Count I of Defendants' Counterclaim with prejudice. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

### 3. Counts II, III and IV: Copyright Claims

#### a. Standing

HPA argues that the Court does not have subject matter jurisdiction over Defendants' copyright-based claims, Counts II-IV, because Defendants do not have a valid copyright, or any legally possible claim to one, and thus lack standing to bring these claims. (Rule 12(b)(1) MTD at 4-9.)

In federal courts, federal question jurisdiction exists for any claim that sounds in copyright law, because copyright is a right granted exclusively by federal law. *Bean v. McDougal Littell*, 538 F. Supp. 2d 1196, 1199 (D. Ariz. 2008). But a claimant must still have the core component of standing under Article III of the Constitution for a federal court to have jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy Article III's standing requirement, a claimant must show that he suffered a "concrete and particularized" injury that is "fairly traceable to the challenged action of the defendant," and that a favorable decision would likely redress the injury. *Friends of the Earth, Inc. v. Laidlaw Env. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). The complaint must allege sufficient specific facts to establish standing for that claimant. *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002). Courts must dismiss a complaint if the claimant fails to provide facts sufficient to establish standing. *See, e.g.*, *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010).

Here, Defendants contend that because the Counterclaim alleges facts to show that they possess a copyright, they have standing to bring their copyright infringement claims against HPA. Specifically, Defendants plead ownership of a copyright in the Masse Plans, through which they also claim ownership over the plans subsequently prepared by

1 HPA. (Countercl. ¶¶ 14-24.) Plaintiff argues that the Masse Plans do not fall within one of the prescribed categories of "work for hire" under the Copyright Act and thus the copyright in the Masse Plans cannot belong to Defendants. (Rule 12(b)(1) MTD at 5-7.) In response, Defendants assert that Mr. Masse has testified that he created the plans with the intention that Defendant ADI would hold the copyright in the plans, supporting their allegations in the Counterclaim that they own the copyright. (Rule 12(b)(1) Resp. at 4.) Whether Defendants possess a valid copyright in the Masse Plans is, at least in part, a question of fact not appropriate for resolution on a motion to dismiss. *See ASARCO, LLC v. Union Pac. R.R. Co.,* 765 F.3d 999, 1004 (9th Cir. 2014) (noting that if, from the allegations of the complaint, an asserted defense is not an "insuperable bar to securing relief" but rather raises disputed issues of fact, dismissal is improper).

In the Counterclaim, Defendants also plead injury from HPA's attempts to copyright work that Defendants claim they own and damages from HPA's attempts to bar them from using the plans to continue development at Castle Rock. (*E.g.*, Countercl. ¶ 39.) This is a sufficiently concrete and particularized injury for standing purposes, and the alleged conduct traces to HPA. Further, in the event that Defendants are successful in prosecuting their claims, the Court could grant injunctive or monetary relief for the infringement. *See Petrella v. Metro-Goldwyn-Mayer, Inc*, 134 S.Ct. 1962, 1976 (2014) (noting that copyright damages can include monetary damages and injunctive relief preventing further infringement). Because Defendants have pled a particularized injury that is fairly traceable to HPA's conduct, and because the Court can provide some relief in the event that Defendants are successful, Defendants have standing to bring Counts II, III and IV of the Counterclaim.

### b. Declaratory Judgments in Copyright

HPA also asserts that the Court must dismiss Defendants' claims for declaratory judgment because the Copyright Act does not contemplate the relief requested, and in the absence of a valid claim for relief, the Court lacks subject matter jurisdiction. (Rule 12(b)(1) MTD at 9-10.)

- 8 -

Copyright law provides for declaratory judgments, even in the context of infringement suits. *Corbello v. DeVito,* 777 F.3d 1058, 1062 (9th Cir. 2015). Indeed, part of the resolution for a suit for infringement may include a declaration as to whether the work at issue is copyrighted itself, whether it infringes on another copyright, and whether the other copyright is valid. *See, e.g.*, *id.* at 1062-63; *Seven Arts Filmed Entm't. Ltd. v. Content Media Corp.*, 733 F.3d 1251, 1256 (9th Cir. 2013); *Wake Up and Ball LLC v. Sony Music Entm't, Inc.,* 119 F. Supp. 3d 944, 947 (D. Ariz. 2015); *Stremor Corp. v. Wirtz*, No. 2:14-CV-01230-NVW, 2014 WL 6872891, at *3 (D. Ariz. Dec. 4, 2014).

As discussed above, Defendants have standing to bring Counts II, III and IV, and Defendants prayed for monetary and injunctive relief in those Counts. Under copyright law, the Court may properly resolve ownership over the Masse Plans and the plans subsequently created pursuant to the Proposal Agreement between HPA and Defendants. Although a court cannot issue a copyright itself as part of the resolution of a case, it may resolve a dispute over ownership to copyrightable material, at least as between the parties in the case before it. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 167-69 (2010) (holding that registration of a copyright is not a precondition for jurisdiction in an infringement suit). The Court's inability to issue a valid copyright in this case does not preclude it from issuing a declaratory judgment and does not strip it of its subject matter jurisdiction. *Id.* at 165-66. Accordingly, the Court has jurisdiction over Counts II, III and IV of Defendants' Counterclaim.

**B. Rule 12(b)(6) Motion to Dismiss**

HPA also moves to dismiss Counts II-XI of the Counterclaim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Rule 12(b)(6) MTD at 1-2.) With regard to Counts II-IV, Defendants' copyright claims, HPA's arguments largely mirror those it made in its Rule 12(b)(1) Motion, which the Court addressed above. There remain factual questions as to the ownership of a copyright in the Masse Plans and the

extent of use authorized to HPA that preclude dismissal of Defendants' claims.[3] *See ASARCO*, 765 F.3d at 1004.

### 1. Legal Standard

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations [] it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When analyzing a complaint under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith*, 84 F.3d at 1217. However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits properly included in the complaint, and matters that may be judicially noticed

---

[3] On the day after it filed its two Motions to Dismiss, HPA filed a separate Motion for Summary Judgment as to its ownership of the copyrights at issue in this lawsuit. (Doc. 113.)

- 10 -

pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998). The court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed "matters of public record"). The court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

### 2.     Counts V-XI: State Law Claims

In Counts V-XI of the Counterclaim, Defendants raise state law claims of breach of contract (Count V), breach of the implied covenant of good faith and fair dealing (Count VI), fraud (Count VII), negligent misrepresentation (Count VIII), violation of the Arizona Consumer Fraud Act (Count IX), violation of the Texas Deceptive Trade Practices Act (Count X), and promissory estoppel (Count XI). (Countercl. ¶¶ 58-125.) The parties do not allege that the Proposal Agreement had a choice of law provision or provide the Court with a choice of state law analysis, and it is unclear whether the Court should apply Colorado, Arizona or Texas law, or some combination thereof, to Defendants' various state law claims. Defendants bring claims against HPA arising from the Proposal Agreement under a Colorado statute regulating the practice of architecture (Count I), the Arizona Consumer Fraud Act (Count IX), and the Texas Deceptive Trade Practices Act (Count X). HPA does not move to dismiss any of these claims on the ground that the state statute does not apply. But to the extent the Court is addressing the adequacy of the allegations in the Counterclaim under Rules 8, 9(b) and 12(b)(6) in resolving HPA's Motions to Dismiss, federal law applies. *See, e.g.*, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

**a.     Alleged Wrongful Conduct**

In its Rule 12(b)(6) Motion with regard to Counts V-XI, HPA first argues that Defendants' claims are impermissible attacks on HPA's attempt—through its own claims against Defendants—to enforce its copyright in the work it completed for Defendants. (Rule 12(b)(6) MTD at 8-10.) In support, HPA cites *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 57-60 (1993), in which the United States Supreme Court relied on its prior holdings to state that a copyright holder is not subject to suit based on a claim it brings to enforce its copyright unless the claim is not an objectively reasonable effort to litigate and is instead a sham. (Rule 12(b)(6) MTD at 8-9.) In response, Defendants argue that this principle does not apply to their claims against HPA because they are not based on HPA's attempt to enforce its copyright. (Rule 12(b)(6) Resp. at 6-8.)

HPA moves to dismiss Defendants' contract-based claims both because they violate this principle of copyright law and because Defendants fail to allege sufficient facts to support their claims.[4] (Rule 12(b)(6) MTD at 8-10, 13-15.) In Counts V and VI, Defendants allege that HPA breached the Proposal Agreement and the implied covenant of good faith and fair dealing in part by "refusing to allow the Owner [first Defendant ADI and subsequently Defendant Auburn Ventures] to use the Revisions for the Project." (Countercl. ¶ 60; *see also* ¶¶ 67-68.) Defendants also allege that, under the Proposal Agreement, Defendants had the right to use or license the HPA plans, drawings and renderings Defendants commissioned for the project and, alternatively, the HPA plans, drawings and renderings were derivative of work for which Defendants owned the copyright. (Countercl. ¶¶ 23, 51, 59; *see also* Doc. 110 at 10-12, Aff. Defenses ¶¶ 15-17.) The allegations in the Counterclaim thus go beyond an attack on HPA's effort to enforce its copyright by stating that HPA breached the Proposal Agreement by trying to prevent

---

[4] In its Motion to Dismiss, HPA applies Arizona contract law without providing a justification for doing so.

- 12 -

Defendants from using plans, drawings and renderings they were entitled to use for the project under the terms of the Proposal Agreement.

Although HPA provided the Court with a copy of the Proposal Agreement as part of the evidence it submitted with its separate Motion for Summary Judgment, the parties did not provide the Court with a copy of the Proposal Agreement in conjunction with the Amended Complaint (Doc. 68), Amended Answer and Counterclaim (Doc. 110), or the present Motions to Dismiss (Docs. 111, 112), even though the Proposal Agreement forms the basis of several of the parties' claims and the Court could have properly considered it in conjunction with the Motions to Dismiss. *See Lee*, 250 F.3d at 688. The Court must therefore rely on the parties' allegations in the Amended Complaint and Amended Answer and Counterclaim as to what the Proposal Agreement states.

The only quoted language from the Proposal Agreement is in HPA's Amended Complaint, as follows:

> All documents furnished by HPA pursuant to this Agreement shall remain the property of HPA and may not be used by the owner for another project without HPA's prior written consent. Payment for design services does not allow use of the design for construction documents by others without written approval from HPA. There is no implied license granted in this Agreement.

(Doc. 68, Am. Compl. ¶ 19.) On its face and without further definition of the term "project," it appears HPA gave the "owner"—who Defendants allege was Defendant ADI and subsequently Defendant Auburn Ventures—permission to use the documents produced by HPA for the current project, but not "another project." The excerpt of the Proposal Agreement does not state whether "others" who are not permitted to use HPA's design for construction purposes include Defendants and their agents or not. The quoted language therefore does not controvert Defendants' allegations in their Counterclaim that the Proposal Agreement entitled them to use the plans, drawings and renderings produced by HPA. Taking those allegations as true for purposes of HPA's Motion to Dismiss, they are sufficient to state claims for breach of contract and the implied covenant of good faith and fair dealing.

Likewise, in Counts VII-XI, the fraud-based and promissory estoppel claims, Defendants allege that HPA made material misrepresentations to Defendants before, while and after HPA completed the limited scope of work under the Proposal Agreement. (Countercl. ¶¶ 73-119.) These claims are not precluded by the principle that a party may not bring a claim to penalize a party for enforcing its copyright, because the basis of the claims is not HPA's attempt to enforce its copyright but rather misrepresentations HPA allegedly made to Defendants. Accordingly, HPA's motion to dismiss Counts VII-XI on these grounds also lacks merit.

### b. The Arizona Parol Evidence Rule

HPA next argues that the Parol Evidence Rule under Arizona common law precludes Defendants from bringing their contract, fraud-based and promissory estoppel claims, Counts V-XI, because, as a basis for these claims, Defendants allege HPA made statements that vary with or contradict the express terms of the Proposal Agreement. (Rule 12(b)(6) MTD at 10-13.) As the Court noted above, HPA does not justify through a choice-of-law analysis the application of Arizona law to any or all of the claims in this case, and the use of Arizona's Parol Evidence Rule is particularly convoluted as HPA applies it to Count X, Defendants' claim under the Texas Deceptive Trade Practices Act. (*See* Rule 12(b)(6) MTD at 12.) In Response, Defendants argue that the Parol Evidence Rule does not apply to fraud-based claims and, in any event, extrinsic evidence may properly be considered to resolve ambiguities, which the Proposal Agreement contains. (Rule 12(b)(6) Resp. at 8-9.)

Even if the Court were to apply Arizona's Parol Evidence Rule in evaluating whether Defendants state a claim in Counts V-XI, Defendants have alleged enough facts to overcome application of the doctrine. The Parol Evidence Rule provides that extrinsic evidence may be used to help the court in interpreting a contract but is not admissible to provide terms that vary from or contradict the contract. *Taylor v. State Farm Mutual Auto Ins. Co.*, 854 P.2d 1134, 1138-41 (Ariz. 1993). As Defendants contend, the doctrine does not destroy their fraud-based claims because of the fraud exception, which provides that

extrinsic evidence is admissible to establish the invalidity of an instrument so long as the alleged misrepresentation is independent of the instrument. *See S. Union Co. v. Sw. Gas Corp.*, 165 F. Supp. 2d 1010, 1031-32 (D. Ariz. 2001). Moreover, as the Court pointed out above, the portion of the Proposal Agreement before the Court contains ambiguities as to the scope of the "project" that HPA's plans, drawings and renderings could be used for and whether Defendants were authorized to use the plans, drawings and renderings for construction or whether they were the "others" not permitted to use the documents without further authorization from HPA. (*See* Rule 12(b)(6) Resp. at 8-9.) Taking these apparent ambiguities into account, together with Defendants' allegations in the Counterclaim, Arizona's Parol Evidence Rule would not preclude Defendants' claims at the pleading stage of this litigation.

### c.    Fraud Claims

HPA last argues that Defendants' fraud-based claims fail because Defendants did not plead them with the requisite particularity under Federal Rule of Civil Procedure 9(b).[5] (Rule 12(b)(6) MTD at 15-17.) Defendants disagree, detailing their fraud-based allegations and pointing out that they have provided adequate information to HPA regarding the circumstances of the alleged misrepresentations. (Rule 12(b)(6) Resp. at 10-12.)

Where a claimant alleges fraud or misrepresentation, Rule 9(b) imposes heightened pleading requirements. Specifically, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). The heightened pleading requirements of Rule 9(b) apply even where "fraud is not a necessary element of a claim." *Vess*, 317 F.3d at 1106. So long as the claimant alleges a claim that "sounds in fraud" or is "grounded in fraud," Rule 9(b) applies. *Id.* "While a federal court will examine state law to determine whether the elements of fraud have

---

[5] HPA again applies Arizona law as to the elements of the causes of action without providing a justification for doing so.

- 15 -

been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Id.*

The Court agrees that Defendants have pled their fraud-based claims with adequate particularity under Rule 9(b). As but one of numerous examples, in Count VII, Defendants allege that, at a meeting in Dallas on June 12 and 13, 2012, Mr. Mark Humphreys, HPA's CEO, represented that Defendants had the right to use HPA's work in connection with their development of the project, (Countercl. ¶¶ 76-77), as well as facts supporting reliance and causation. These allegations meet the requirements of Rule 9(b), *see Vess*, 317 F.3d at 1106, and the Court must therefore deny HPA's motion to dismiss on these grounds.

### III.  CONCLUSION

With regard to HPA's Rule 12(b)(1) Motion to Dismiss, Defendants fail to allege sufficient facts to establish subject matter jurisdiction for Count I of the Counterclaim, and the Court will dismiss Count I with prejudice. However, the Counterclaim alleges sufficient facts to establish subject matter jurisdiction for Counts II, III and IV, the copyright-based claims. Likewise, with regard to HPA's Rule 12(b)(6) Motion to Dismiss, while the parties provide the Court with no choice-of-law analyses, Defendants allege sufficient facts to state claims for Counts II through XI.

**IT IS THEREFORE ORDERED** granting in part and denying in part HPA's Rule 12(b)(1) Motion to Dismiss Counterclaim Counts for Lack of Subject Matter Jurisdiction (Doc. 111). Count I is dismissed with prejudice, but the Court denies the Motion with respect to Counts II, III and IV.

///
///
///
///
///

**IT IS FURTHER ORDERED** denying HPA's Rule 12(b)(6) and Rule 9(b) Motion to Dismiss Counterclaim (Doc. 112).

Dated this 15th day of April, 2016.

_____
Honorable John J. Tuchi
United States District Judge